UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CERTIFIED MULTI-MEDIA SOLUTIONS, LTD.,

                     Plaintiff,

      -against-

PREFERRED    CONTRACTORS    INSURANCE
COMPANY RISK RETENTION GROUP LLC,

                    Defendant.
------------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
14-cv-5227(ADS)(SIL)

**APPEARANCES:**

**GALARZA LAW OFFICE**
*Attorneys for the Plaintiff*
5020 Sunrise Highway, 2nd Floor
Massapequa Park, NY 11762
      By:    Julio C. Galarza, Esq., Of Counsel

**TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP**
*Attorneys for the Defendant*
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, NY 10532
      By:    Cheryl Paula Vollwiler, Esq., Of Counsel

**PUTNEY, TWOMBLY, HALL & HIRSON, LLP**
*Attorneys for the Interested Party St. Paul Fire & Marine Insurance Company*
521 Fifth Avenue, 10th Floor
New York, NY 10175
      By:    Thomas A. Martin, Esq.
               James M. Strauss, Esq., Of Counsel

**SPATT, District Judge:**

On September 6, 2014, the Plaintiff Certified Multi-Media Solutions, Ltd.

("CMMS" or the "Plaintiff") commenced this action against the Defendant Preferred

Contractors Insurance Company Risk Retention Group LLC ("PCIC" or the "Defendant").  Presently before the Court is motion by an interested non-party, St. Paul Fire & Marine Insurance Company, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 24, seeking leave of the Court to intervene as a Plaintiff in this action.

For the reasons that follow, the motion to intervene is granted.

## I.      Background

The following facts are drawn from the pleadings and the papers and exhibits submitted in connection with the instant motion.

## A.      The Contract between the Plaintiff and Getronics USA, Inc.

On October 28, 2008, the Plaintiff CMMS entered into a written agreement with Getronics USA, Inc. ("Getronics") entitled Installation Services Subcontract Agreement (the "2008 Agreement").  Although not made clear in the record, it appears that the Agreement was executed in connection with a construction project (the "Project") located at the Gateway Center at the Bronx Terminal Market, at the intersection of Exterior Street and River Avenue in the Bronx (the "Premises").  In relevant part, the 2008 Agreement provides that Getronics hired CMMS to provide certain computer equipment and installation services.

Of importance, the 2008 Agreement contains the following provision:

**11. Hold Harmless; Insurance.**
(a) In consideration of this Agreement, Subcontractor [CMMS] hereby agrees to indemnify and hold Getronics harmless from any and all suits, claims, actions, damages or losses whatsoever (including attorney's fees) arising from injury to persons or damage to property which results in any way from any act or omission of [CMMS], its

employees, agents and subcontractors in its performance hereunder or presence at a Getronics or Customer facility.

See Exhibit "A", Affidavit of Thomas A. Martin, Esq.

## B.    The Underlying PCIC Insurance Policy

At the center of the instant litigation is a general liability insurance policy, which was issued by the Defendant PCIC to CMMS.  The Policy covered the period March 14, 2009 to March 14, 2010 (the "Policy").

Relevant here, the Policy contains the following exclusionary provision:

**2. Exclusions**

[ . . . ]

**b. Contractual Liability**
"Bodily injury" or "property damage" for which [CMMS] is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

[ . . . ]

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
  (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
  (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

See Compl. Ex. "A" (bold in original).

## C. The Accident

In 2009, one Anthony Balzano ("Balzano"), a non-party to this action, was employed by CMMS as a union electrician. On March 19, 2009, Balzano was working in his capacity as an electrician for CMMS on the Project, when he allegedly fell and sustained severe and permanent personal injuries.

## D. The Bronx County Litigation

On August 7, 2009, Balzano commenced a personal injury negligence action in the Bronx County Supreme Court (the "Bronx County Litigation") against the following named entities: BTM Development Partners, LLC ("BTM"); Target Corporation ("Target"); and Plaza Construction Corp. ("Plaza"). According to the complaint in the Bronx County Litigation, BTM was the owner and lessor of the Premises; Target was the lessee and tenant-in-possession of the Premises; and Plaza was the general contractor for the Project. Balzano alleged in the Bronx County Litigation that the actions or omissions of BTM, Target, and Plaza proximately caused his injuries.

## E. PCIC's Disclaimer of Coverage

Apparently, CMMS sought coverage under the Policy for potential liability arising out of the claims asserted in the Bronx County Litigation. In this regard, CMMS alleges that it provided PCIC with timely notice of such claims.

However, on March 12, 2010, PCIC, through its claims administrator Engle Martin Claims Administrative Services ("Engle Martin"), disclaimed coverage under the Policy. Of relevance here, PCIC, through Engle Martin, stated as follows:

4

[A]pplicable to our analysis of coverage is the following exclusion:

***

**SECTION I – COVERAGES**
    **2. Exclusions**
        This insurance does not apply to:
        e. Employer's Liability
          "Bodily Injury" to:
          (1) An "employee" of the insured arising out of and in the course of:
            (a) Employment by the insured; or
            (b) Performing duties related to the conduct of the insured's business;

***

As previously mentioned, your employee, Anthony Balzano, has submitted a claim for injuries sustained in his fall, while on the jobsite.

It is therefore the determination of PCIC, under [the Policy] issued to [CMMS], that there is no possibility of coverage for this claim, as it is presented by Anthony Balzano, the injured employee of [CMMS]. The application of the Employers Liability Exclusion precludes any possibility of coverage since it is undisputed that Mr. Balzano is, or was, an employee of [CMMS].

Because there is no coverage for this loss, [the Group] will not be able to provide a defense/indemnification for this loss to [CMMS], or any other insured in this claim.

See Compl., Ex. "D".

## F.    The Impleader of CMMS in the Bronx County Litigation

On or about March 18, 2011, Plaza, one of the defendants in the Bronx County Litigation, filed a third-party complaint against Getronics.

In turn, on or about July 12, 2011, Getronics filed a third-party complaint against CMMS. Getronics asserted that the 2008 Agreement obligated CMMS to

provide it with a defense and to indemnify it for any liability and/or damages incurred in the Bronx County Litigation.

PCIC provided a defense to CMMS in the Bronx County Litigation, subject to a reservation of rights.

## G. PCIC's Second Disclaimer of Coverage

On or about January 6, 2012, approximately five months after CMMS was impleaded in the Bronx County Litigation, PCIC altered its position with respect to the Policy. It is this shift in PCIC's position that forms the basis of CMMS's claims in this case.

Whereas previously, PCIC had invoked the "Employer's Liability Exclusion" to disclaim coverage on the ground that Balzano was employed by CMMS at the time of the accident, PCIC now relied upon a so-called "Endorsement 23" as an additional basis for limiting coverage. That endorsement allegedly provides for a $10,000 sublimit on claims involving personal injuries sustained by employees, *e.g.*, Balzano, of an insured, *i.e.*, CMMS. Therefore, PCIC asserted that, even if it were required to indemnify CMMS for claims arising from Balzano's injuries, the amount of any potential liability would be capped at $10,000.

In a related letter dated June 28, 2012, PCIC, through its counsel, described the alleged application of Endorsement 23 more particularly:

[T]he purpose of this letter is to advise that PCIC has reconsidered its coverage position at your request and has determined that the $10,000 sublimit under Endorsement 23 "Action Over" applies under the current facts and circumstances. Endorsement 23 provides as follows:

> Notwithstanding the limit of coverage shown in the Declarations and/or Section III of this policy ("Limits of Insurance"), $10,000 only is the most we will pay *for any and all claims, including any claim for contractual indemnification,* arising from or related to any "bodily injury", "property damage" or "personal injury" sustained by an employee of an insured while injured, harmed or damaged in the scope of such employment.
> In any action brought by such employee, if *you* are impleaded into said action, or if any third party action over is commenced against *you*, irrespective of the claims or theories set forth therein, the $10,000 limit of coverage as provided shall apply when:
>
> 1. The injury sustained by the employee is a "grave injury" as defined by Section 11 of the New York State Workers' Compensation Law . . . **and**
> 2. *You* are required by contract, regulation or law to be insured under a workers' compensation policy providing liability coverage for claims arising from injuries to employees.
>
>         *     *     *
>
> Because the only claim against [CMMS] is the fourth-party action over by Getronics, this matter falls squarely within the first paragraph of Endorsement No. 23. As such, the $10,000 limit of liability is the only amount that PCIC is obligated to pay in connection with this matter because the sublimit applies, on its face, to any and all claims involving bodily injury to an employee in the scope of his employment, including claims for contractual indemnification. . . .

<u>See</u> Compl., Ex. "J" (emphasis and bold in original).

## H.     This Coverage Action

On September 6, 2014, more than two years after PCIC articulated its new coverage position, CMMS commenced this federal action. In this case, CMMS contends that PCIC's reliance upon Endorsement 23 to disclaim and/or limit

coverage under the Policy was untimely and therefore invalid. CMMS asserts that PCIC is obligated to provide it with a defense and indemnify it for liability and/or damages incurred in the Bronx County Litigation to the full extent of the Policy's $1 Million limits, and seeks a declaratory judgment to that effect.

## I.      The State Court Summary Judgment Decision

On September 14, 2014, approximately one week after the instant action was commenced, New York Supreme Court Justice Kenneth L. Thompson, Jr. granted summary judgment to Getronics on its third-party claims against CMMS in the Bronx County Litigation. In particular, Justice Thompson held, as a matter of law, that paragraph 11(a) of the 2008 Agreement, which is quoted above, contractually obligates CMMS to provide Getronics with a defense and indemnify it for liability and/or damages incurred in the Bronx County Litigation.

## J.      The Aftermath of Justice Thompson's Decision

At the time of Balzano's injury, Getronics was insured by St. Paul Fire & Marine Insurance Company ("Travelers"). As a consequence, prior to Justice Thompson's decision, outlined above, Travelers had been providing a defense to Getronics in the Bronx County Litigation, allegedly expending a sum in excess of $80,000 to do so (the "Defense Costs"). Allegedly, these costs are continuing.

However, when Justice Thompson held that, pursuant to the 2008 Agreement, CMMS was obligated to defend and indemnify Getronics, Travelers sought to take two related actions: (i) it sought to "tender" the defense of Getronics to CMMS, thereby transferring to CMMS the obligation of providing a defense to

Getronics in the Bronx County Litigation; and (ii) it sought to recoup from CMMS those Defense Costs already expended in furtherance of providing that defense.

In this regard, on November 20, 2014, approximately two months after Justice Thompson's decision, Travelers sent a letter to CMMS (the "Tender Letter"), which stated, in relevant part, as follows:

> By this letter, [Travelers] hereby tenders to [CMMS] the defense and indemnity of Getronics in connection with [the Bronx County Litigation], and further demands reimbursement of all reasonable defense costs incurred to date by Travelers in defending Getronics in the [Bronx County Litigation]. . . .
> The basis for Getronics' tender is the recent Decision/Order rendered by Justice Kenneth Thompson in the [Bronx County Litigation] . . . By that Decision/Order, [CMMS] was held to owe contractual indemnity to Getronics pursuant to the terms of [the 2008 Agreement]. . . .
> To date, Travelers, as the insurer for Getronics, has appointed counsel and paid for the defense of Getronics in the [Bronx County Litigation]. That defense is hereby tendered to you. It is expected that [CMMS] will take over Getronics' defense, appoint counsel for Getronics, and reimburse Travelers for all defense costs incurred through and including [CMMS]'s takeover of Getronics' defense and indemnity.
> On a related note, Travelers is aware [of the PCIC Policy]. . . . By this letter Travelers hereby requests that: (i) you forward this tender letter to PCIC for coverage under the PCIC [P]olicy; and (ii) PCIC accept this tender and cover this claim for past reimbursement costs and a takeover of Getronics' defense under the terms of the PCIC [P]olicy.

See Jan. 16, 2015 Affidavit of Thomas A. Martin, Ex. "E".

On December 1, 2014, CMMS responded to the Tender Letter, in relevant part, as follows:

... [CMMS] purchased a policy of insurance with [PCIC] providing coverage for this loss. That policy obligates PCIC to defend and indemnify [CMMS] in the [Bronx County Litigation]. To the extent that [CMMS] is obligated to also pay counsel fees for Getronics, the PCIC policy would also pay those defense costs. Without commenting in any way on the merits of the claim stated in your letter, it is the obligation of PCIC pursuant to its insurance policy it issued to [CMMS] to pay all reasonable legal fees [CMMS] is required to pay in this case.

It is therefore the position of [CMMS] that if, as you say, [CMMS] is obligated to pay reasonable attorney's fees incurred by Getronics, that its insurance company should pay those fees. You may therefore pursue whatever legal remedies you see fit as against PCIC in this case.

Id., Ex. "F".

## K.     The Instant Motion to Intervene

On January 16, 2015, Travelers filed a motion, pursuant to Fed. R. Civ. P. 24, seeking to intervene as a Plaintiff in this action. In particular, Travelers seeks to obtain a judicial determination as to PCIC's coverage obligations under the Policy, namely, whether PCIC, as the insurer of CMMS, is obligated to accept Travelers' tender of Getronics' defense in the Bronx County Litigation and also whether PCIC is responsible for reimbursing the Defense Costs that were already borne by Travelers.

Travelers contends that its interest in the resolution of these issues is sufficiently related to the coverage issues asserted by CMMS, so that it makes sense to adjudicate them together. In this regard, in support of the instant motion, Travelers submitted a proposed intervener complaint (the "Intervener Complaint"). The allegations in the Intervener Complaint substantially mirror the facts outlined above and seek relief in the form of a declaratory judgment, as follows: that

CMMS's obligation to provide a defense and indemnity to Getronics is covered under the Policy issued by PCIC; that PCIC is, therefore, required to reimburse Travelers for past Defense Costs; that PCIC is also responsible for all future costs incurred in defending Getronics in the Bronx County Litigation; and that PCIC is liable for any damages incurred by Travelers as a result of PCIC's failure to assume these obligations.

The motion was fully briefed on February 9, 2015, and is presently before the Court. PCIC opposed the motion and contends that Travelers is unable to demonstrate its entitlement to intervene in this case. CMMS takes no position with respect to Travelers' motion.

The Court will now discuss the applicable law and address the parties' respective contentions.

## II.      Discussion

## A.      The Applicable Legal Standards

Fed. R. Civ. P. 24 provides for two types of intervention in a civil lawsuit: intervention as of right and permissive intervention.

Intervention as of right, which is governed by Rule 24(a), provides that, upon a timely motion, the Court *must* permit anyone to intervene who "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the

movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(1)-(2).

As to the second prong of this standard, in order "to intervene as of right pursuant to Rule 24(a)(2), a movant must show that (1) the application is timely; (2) the applicant claims an interest relating to the subject matter of the action; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party." North Shore-Long Island Jewish Health Sys. v. Multiplan, Inc., 12-cv-1633, 2015 U.S. Dist. LEXIS 18384, at *50 (E.D.N.Y. Feb. 13, 2015) (Report and Recommendation), adopted, 2015 U.S. Dist. LEXIS 37920 (E.D.N.Y. Mar. 25, 2015); see Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk, 101 F.R.D. 497, 499-500 (E.D.N.Y. 1984) (noting that "[w]hile some courts and commentators refer to a 'threefold test for intervention as of right,' this Circuit has recently analyzed the applicants' burden in terms of [the above-referenced] four-pronged test" (internal citation omitted)).

By contrast, permissive intervention is governed by Rule 24(b) and confers upon the Court discretion to permit intervention by anyone who "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A)-(B). With regard to permissive intervention, the Court's analysis is guided by the same four factors that it considers for intervention as of right. See NS-LIJ v. Multiplan, Inc., 2015 U.S. Dist. LEXIS 18384, at *559-*60 ("In

exercising its broad discretion under Rule 24(b), a court considers the same factors that it considers for intervention as of right" (quoting <u>MASTR Adjustable Rate Mortgs. Trust 2006-Oa3 v. UBS Real Estate Secs., Inc.</u>, 12-cv-7322, 2013 U.S. Dist. LEXIS 15187, at *6-*7 (S.D.N.Y. Jan. 11, 2013)).

In addition, the Rules direct the Court, "[i]n exercising its discretion," to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); <u>see</u> <u>Citizens for an Orderly Energy Policy</u>, 101 F.R.D. at 502 ("It is well-settled that the principal consideration in either granting or denying an application for permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties'" (quoting <u>United States Postal Service v. Brennan</u>, 597 F.2d 188, 191 (2d Cir. 1978)).

**B.    As to Whether Travelers May Intervene as of Right**

Travelers does not contend that any federal statute provides it with an unconditional right to intervene in this action. Accordingly, Fed. R. Civ. P. 24(a)(1) is not implicated here. However, Travelers contends that each of the four factors relevant to the analysis under Rule 24(a)(2) is satisfied, and thus intervention as of right is appropriate on that basis.

**1.    As to Whether the Motion is Timely**

"[A] district court has discretion to evaluate the timeliness of a motion to intervene in light of 'all the circumstances,' including '(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to

existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.' " <u>SEC v. Callahan</u>, 2 F. Supp. 3d 427, 438 (E.D.N.Y. 2014) (Spatt, J.) (quoting <u>United States v. Pitney Bowes, Inc.</u>, 25 F.3d 66, 70 (2d Cir. 1994)).

At the outset, the Court notes that PCIC did not address the issue of timeliness at all in opposition to the instant motion. In any event, the Court finds that, under the facts of this case, as to timeliness, the relevant factors weigh in Travelers' favor.

Although the timeliness inquiry is "not confined strictly to chronology," <u>id.</u>, the sequence of relevant events supports a finding that Travelers' motion to intervene was timely. In particular, as described above, this action was commenced by CMMS on September 6, 2014; Justice Thompson held that CMMS was responsible for the defense and indemnity of Getronics on September 14, 2014; approximately two months later, on November 20, 2014, Travelers sent the Tender Letter demanding that CMMS reimburse it for the Defense Costs and assume the future defense of Getronics in the Bronx County Litigation; on December 1, 2014, in a responsive letter to Travelers, CMMS took the position that its insurer, PCIC, is the party actually responsible for such sums; and approximately six weeks later, on January 16, 2015, Travelers moved to intervene in this action against PCIC. In the Court's view, the record demonstrates that Travelers acted with appropriate expediency in seeking an opportunity to assert its rights in this action, and PCIC does not contend otherwise.

In fact, PCIC has not identified any basis for deeming the instant motion untimely. The Court can discern of no prejudice to PCIC resulting from the length of time that Travelers took to make the instant motion. Nor can it perceive any unusual circumstances militating against a finding of timeliness. On the contrary, as Travelers aptly points out, this case has barely progressed past the pleading stage, with dispositive motions by both parties still pending before the Court. Therefore, in the Court's view, there is no substantial risk of prejudice to the existing parties' rights by deeming the application timely. Cf. Floyd v. City of New York, 302 F.R.D. 69, 84 (S.D.N.Y. 2014) (noting that the Second Circuit generally disfavors intervention *after* liability has been adjudged due to the delay and prejudice it inflicts on existing parties) (emphasis added), aff'd, 770 F.3d 1051 (2d Cir. 2014).

Accordingly, the first factor relating to intervention as of right, namely, the timeliness of the motion to intervene, weighs in favor of Travelers.

### 2. As to Whether Travelers Claims an Interest Relating to the Subject Matter of the Action

A closer question is presented with regard to whether Travelers has an interest in the subject matter of this case which is sufficient to justify intervention. "Under Rule 24(a)(2), the proposed intervenor must have a 'direct, substantial, and legally protectable' interest in the subject matter of the action." United States v. City of New York, 198 F.3d 360, 365 (2d Cir. 1999) (quoting Washington Elec. Corp. Inc. v. Massachusetts Mun. Elec. Co., 922 F.2d 92, 96 (2d Cir. 1990). " 'An interest that is remote from the subject matter of the proceeding, or that is contingent upon

the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.'" Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC, 542 F. Supp. 2d 296, 304 (S.D.N.Y. Mar. 25, 2008) (quoting Washington Elec., 922 F.2d at 97). In other words, "'intervention . . . cannot be used as a means to inject collateral issues into an existing action.'" U.S. v. City of New York, 198 F.3d at 365 (quoting New York News, Inc. v. Kheel, 972 F.2d 482, 486 (2d Cir. 1992)).

Travelers describes its interest in this litigation as follows:

> Travelers' right to reimbursement of its defense costs, and its attempt to be relieved of its coverage obligations in favor of PCIC, depends in part on [CMMS]'s success in this lawsuit. In the [2008 Agreement], [CMMS] contractually agreed to defend Getronics and to obtain insurance to secure Getronics's right to indemnification. Getronics' right to that coverage would be hollow unless PCIC's Policy were held to apply here, and the availability of PCIC's Policy is central to Travelers' claims as intervener. Because this litigation will determine [CMMS]'s rights under the PCIC Policy as well as the limits of coverage available under that Policy, if any, thus affecting Travelers' obligations to its insured Getronics, Travelers has an interest in this action which favors intervention.

Travelers Memo of Law at 11.

In opposition, PCIC contends that Travelers is neither a party to nor a third-party beneficiary of the underlying Policy and thus lacks standing to intervene as a Plaintiff in this action. PCIC relies upon Nationwide Mutual Fire Insurance Company v. Rankin, 99-cv-591C, 2000 U.S. Dist. LEXIS 20035 (W.D.N.Y. 2000) ("Rankin") for the proposition that, unless Travelers obtains a money judgment against CMMS, it has no "interest" in this insurance coverage litigation for purposes of Fed. R. Civ. P. 24(a)(2).

However, in the Court's view, Travelers' interest in ensuring that CMMS will have sufficient access to the proceeds of PCIC's Policy to meet its obligations under the 2008 Agreement, namely, to assume from Travelers the defense and indemnity of Getronics in the Bronx County Litigation and to reimburse Travelers for its Defense Costs, is a sufficiently direct, substantial, and protectable interest to satisfy the second prong of the intervention standard.

In reaching this conclusion, the Court notes that <u>Rankin</u> is distinguishable from the facts and circumstances of this case. <u>Rankin</u> was an insurance coverage action in which the insurer, Nationwide Mutual Insurance Company ("Nationwide"), sought a declaratory judgment that it owed no duty to defend or indemnify its insured ("Rankin") in an underlying personal injury action. The plaintiff in the underlying personal injury case ("DeCarlo") was awarded summary judgment on the issue of liability but had not yet received a final money judgment in his favor. He sought to intervene in the coverage action between Nationwide and Rankin, asserting that, because he successfully obtained summary judgment against Rankin in the underlying personal injury suit, he had a protectable interest in the availability of the proceeds under Nationwide's policy to Rankin.

The court relied upon New York Insurance Law § 3420 to deny DeCarlo's motion to intervene. That statute limits the circumstances under which insurance carriers can be subjected to suit under New York law. In particular, if a personal injury plaintiff obtains a judgment against an insurance carrier's insured, the underlying plaintiff cannot automatically sue the carrier to enforce the terms of the

policy.  Rather, the underlying plaintiff must first obtain a judgment against the insured, which must remain unsatisfied for thirty days after service of notice of entry.

Interpreting this provision of state law, the court in <u>Rankin</u> held that "[w]ithout a money judgment, let alone an unsatisfied judgment, against Rankin in the underlying action, DeCarlo has no interest in the Nationwide-Rankin litigation because, under section 3420, his interest is premature."  <u>Rankin</u>, 2000 U.S. Dist. LEXIS 20035, at *10.  The court held that any such interest "is 'contingent on both [DeCarlo's] ultimate success in the state tort action and [Nationwide's] failure to satisfy this judgment against the insured[ ].' "  <u>Id.</u> (quoting <u>Fed. Ins. Co. v. Kingsbury Props., Ltd.</u>, 90-cv-6211, 1992 U.S. Dist. LEXIS 16126, at *7 (S.D.N.Y. Oct. 21, 1992)).

In this regard, the court in <u>Rankin</u> held that "a contingent interest of an underlying tort plaintiff is not a sufficient 'interest' to justify intervention under Fed. R. Civ. P. 24(a)(2)."  <u>Id.</u> at *10-*11 (quoting <u>Restor-A-Dent Dental Labs. V. Certified Allied Prods., Inc.</u>, 725 F.2d 871, 875 (2d Cir. 1984)).  "A federal declaratory judgment action would also be 'premature if standing to maintain such an action depends on a future event [state court tort claimants receiving judgment in their favor] that is beyond the control of the parties and that may never occur.' "  <u>Id.</u> at *11 (quoting <u>NAP, Inc. v. Shuttletex, Inc.</u>, 112 F. Supp. 2d 369, 376 (S.D.N.Y. 2000)).

The Court finds that this decision is not analogous to the situation in this case. In particular, in the Court's view, § 3420 does not bar Travelers' coverage claim because Travelers is neither a personal injury plaintiff seeking to make a claim under the terms of the PCIC Policy, nor is its interest in the Policy contingent on any future event that is beyond the control of the parties. On the contrary, in the Court's view, Travelers' relationship to PCIC is more akin to that of co-insurers who share a common insured in CMMS.

In this regard, the Court is persuaded by the decision in <u>Hartford Fire Ins. Co. v. Mitlof</u>, 193 F.R.D. 154 (S.D.N.Y. 2000), cited by Travelers, where the court, confronted with a situation similar to this case, stated as follows:

> The law is clear as to actions initiated by personal injury claimants and judgment creditors against marine insurers. However, the parties point to no case, and an independent search by this Court found none, on point with the facts of the instant case, which depart in several important respects from cases cited by [the Defendant] in opposition to [the proposed intervener]'s motion to intervene. . . . [I]mportantly, [the proposed intervener] is not a personal injury claimant nor a judgment creditor seeking compensation for a loss under the [Defendant's] Policy, but another insurer that is currently providing the [Plaintiffs] with a defense in the underlying personal injury actions. . . . [The proposed intervener] is not making a claim under the policy, but is seeking to intervene in this Court's determination of Hartford's obligations because the scope of its own obligations may depend upon the outcome.

<u>Mitlof</u>, 193 F.R.D. at 159. Applying this reasoning, the court in <u>Mitlof</u> held that § 3420 did not bar the proposed intervener from intervening in the federal declaratory judgment action.

This Court finds the reasoning in that case to be applicable here. There is no question that Travelers is not an injured third-party claimant seeking to enforce

coverage under the PCIC Policy.  Rather, Travelers is an insurer of Getronics whose own continued coverage obligations will necessarily be shaped by the Court's determination of PCIC's obligations in this action.  As the court in <u>Mitlof</u> explained:

> [The proposed intervener] is currently providing the [Plaintiffs] with a defense under a reservation of rights.  If [the Defendant] prevails, the [Plaintiffs] will not be entitled to coverage under the policy.  If [the Defendant] does not prevail in the instant action, [the Defendant], as primary insurer, could be required to provide the [Plaintiffs] with a defense and the limits of the [Defendant's] Policy would have to be exhausted before [the proposed intervener] is required to cover any judgments in the personal injury lawsuits.

<u>Id.</u>

The Court finds this reasoning analogous to the present situation because the scope of Travelers' obligations to Getronics is necessarily affected by the availability of coverage under the PCIC Policy, *i.e.*, the ultimate issue in this litigation.  If PCIC prevails in this case, and the Court determines either (a) that the Policy does not provide coverage to CMMS or (b) that coverage is capped at $10,000, then CMMS may not be able to contribute to the defense and indemnity of Getronics, as it is required to do under the 2008 Agreement.  It also may not be able to reimburse Travelers for the Defense Costs that it has already incurred.

As a direct result, Travelers may be left solely to bear the cost of defending and indemnifying Getronics' in the Bronx County Litigation, despite Justice Thompson's holding that CMMS is liable in contractual indemnity to Getronics, as a matter of law.  As a practical matter, it may also be left without a source of reimbursement for its Defense Costs, which are alleged to exceed $80,000.

If, however, the Court determines that PCIC has a coverage obligation under the Policy, Travelers' own obligations may be alleviated, in whole or in part. In the Court's view, this constitutes a substantial and protectable interest that militates in favor of permitting intervention. In addition, under the facts and circumstances of this case, the Court finds that New York Insurance Law § 3420 does not bar Travelers from intervening.

Accordingly, the second factor relating to intervention as of right, namely, a direct, substantial, and legally protectable right of Travelers in the subject matter of this action, weighs in favor of Travelers.

### 3. As to Whether the Disposition of this Action May Impair the Protection of Travelers' Interest

For substantially the reasons stated above, the Court further finds that the third factor also favors Travelers. In this regard, the Court reiterates that, if Travelers is denied participation in this action, and CMMS fails to adequately establish coverage under the Policy, Travelers risks a costly continuation of its defense and indemnity obligations to Getronics. It may also be unable to recoup the allegedly substantial Defense Costs already incurred. In the Court's view, such an outcome would impair the protection of Travelers' interest.

Further, although not specifically addressed by the parties, the Court notes that Travelers' ability to effectively enforce the 2008 Agreement may well be impaired by the precedential effect that an adverse judgment in this action could have. As the court in Mitlof observed, "[a]lthough the apprehended force of *stare decisis* will not support intervention as of right in all cases, it does so here, where as

a practical matter, [the proposed intervener]'s interests will be impaired by a judgment in [the Defendant]'s favor. The reality is that [the proposed intervener] would at least find itself waging an uphill battle in seeking indemnification from [the Defendant] if this court holds, in a contest between [the Defendant] and its insured, that [the Defendant] has no obligations under the policy." Mitlof, 193 F.R.D. at 162 (quoting Nation of Wisconsin v. State of New York, 732 F.2d 261, 266 (2d Cir. 1984) (internal quotation marks and citation omitted).

In this regard, the Court also takes note of Maryland Cas. Co. v. W.R. Grace & Co., 88-cv-4337, 1996 U.S. Dist. LEXIS 868 (S.D.N.Y. 1996), aff'd, 332 F.3d 145 (2d Cir. 2003). In that case, an insurance carrier ("Maryland Casualty") commenced a federal declaratory judgment action against its insured ("Grace"), seeking a declaration that it was not liable for environmental cleanup costs pursuant to policies of insurance that it issued to Grace. A group of excess carriers (collectively, "Hartford") moved to intervene to obtain a declaration as to their own policy coverage responsibilities. In evaluating whether Hartford satisfied the Rule 24(a)(2) requirements, the court reasoned that Hartford "might suffer practical disadvantage from decisions issued in this case if they attempted to relitigate the issues in a later action, and thus they meet the impairment requirement for intervention as of right." W.R. Grace & Co., 1996 U.S. Dist. LEXIS 868, at *6-*7 (citing Atlantis Dev. Corp. v. United States, 379 F.2d 818, 825-26 (5th Cir. 1967); Citizens for an Orderly Energy Policy, 101 F.R.D. at 501).

The Court finds the reasoning of these cases applicable to the facts of this case. If Travelers is excluded from this contest between CMMS and PCIC, its recourse may likely be limited to commencing litigation anew to enforce the 2008 Agreement and Justice Thompson's award of summary judgment in the Bronx County Litigation. That action would, in all likelihood, revisit the same issues concerning the availability and limits of the PCIC Policy that will inevitably be central to a determination in this case. However, Travelers' interests may well be prejudiced in that subsequent action by a determination of this Court that PCIC does not owe coverage to CMMS under the Policy – a determination which would have been rendered without its involvement.

Accordingly, in the Court's view, this is a case "[w]here *stare decisis* as a practical matter will impair [Travelers'] ability to vindicate its interests in a separate lawsuit" and concludes that this fact is sufficient to supply "the requisite impairment of interest to satisfy Rule 24(a)." Home Ins. Co. v. Liberty Mut. Ins. Co., 87-cv-0675, 1990 U.S. Dist. LEXIS 15762, at *14-*15 (S.D.N.Y. Nov. 20, 1990) (collecting cases); see Sackman v. Liggett Grp., 167 F.R.D. 6, 21 (E.D.N.Y. 1996) (noting that "the Second Circuit has recognized that the *stare decisis* effect of a court's decision is sufficient to demonstrate the requisite impairment of an interest to support a motion to intervene").

### 4. As to Whether Travelers' Interest is Adequately Protected by an Existing Party

"In general, Rule 24(a)(2) requires a showing that the representation of [a proposed intervener's] interest 'may be' inadequate, and that the burden of making

that showing is 'minimal.' " <u>Sackman</u>, 167 F.R.D. at 22 (quoting <u>Trbovich v. United</u> <u>Mine Workers</u>, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972)). "The last factor, adequacy of representation, is 'a minor factor at most.' " <u>Citizens for an</u> <u>Orderly Energy Policy</u>, 101 F.R.D. at 502 (quoting <u>United States v. Columbia</u> <u>Pictures, Indus., Inc.</u>, 88 F.R.D. 186, 189 (S.D.N.Y. 1980)). Nevertheless, "where the same overall objective exists for the putative intervenor and one party in the lawsuit, the applicant must overcome the presumption of adequate representation." <u>Sackman</u>, 167 F.R.D. at 22 (citing <u>United States Postal Serv. v. Brennan</u>, 579 F.2d 188, 191 (2d Cir. 1978)).

In this case, Travelers concedes that, at the present time, it has somewhat overlapping interests with CMMS, namely, both parties are seeking to achieve maximum coverage under the PCIC Policy. However, Travelers asserts that the parties' positions relative to one another in this litigation may change if, for example, CMMS and PCIC decide to settle their dispute for less than the full amount of coverage under the Policy. According to Travelers this would work to its disadvantage by increasing its own obligations to Getronics. Thus, Travelers contends that it may well be forced to take an adversarial posture relative to CMMS in order to prevent a settlement that will impair Travelers' interests. Such a favorable result will be impossible if Travelers is not permitted to intervene.

The Court is unpersuaded by this argument, which has previously been rejected in this district. <u>See, e.g.</u>, <u>A&P v. Town of E. Hampton</u>, 178 F.R.D. 39, 44, (E.D.N.Y. 1998) ("The mere possibility that a party may at some future time enter

into a settlement cannot alone show inadequate representation. If this were so, the requirement that the would-be intervenor show inadequacy of representation would be effectively written out of the rule, for it is always a possibility that the present parties will settle a lawsuit") (quoting <u>Bush v. Viterna</u>, 740 F.2d 350, 358 (5th Cir. 1984)).

In addition, Travelers asserts that CMMS lacks an actual incentive to vigorously protect its interest in the Policy. In particular, Travelers asserts that it is currently providing a defense and indemnity to Getronics in the Bronx County Litigation. It asserts that it will continue to do so, even if PCIC prevails in this litigation and the Court determines that the Policy does not provide coverage to CMMS and, by extension, to Getronics. Therefore, according to Travelers, CMMS lacks incentive to represent Travelers' interest because, no matter the outcome of this action, as a practical matter, CMMS will not be called upon to assume the cost of Getronics' defense and indemnity. In the Court's view, this concern is sufficient to satisfy Travelers' "minimal" burden of showing that CMMS's representation of its interests "may be" inadequate.

In reaching this conclusion, the Court notes that the question of whether CMMS will adequately represent Travelers' interests in this action is a close one. However, in the Court's view, an overly rigid application of this rule would not further the ends of justice. In this regard, the Court evokes the following reasoning of Judge Frank Altimari, when he was a judge of this Court, in <u>Citizens for an Orderly Energy Policy</u>, <u>supra</u>:

> In sum, we find that [the proposed intervener] has satisfied its minimal burden and is entitled to intervene as of right in this action. In any event, were we to conclude otherwise, as by finding that [the proposed intervener] is adequately represented in this action, we would invite [the proposed intervener] to move [for permissive intervention] pursuant to Rule 24(b)(2) . . . and immediately grant that motion. In light of [the proposed intervener]'s great interest in the subject matter of this action, the possible contribution it may make to proper resolution of the issues, and the Court's interest in resolving these difficult issues in one lawsuit with the participation of all concerned parties, it hardly makes sense to bar [the proposed intervener]'s entrance into this lawsuit.

Citizens for an Orderly Energy Policy, 101 F.R.D. at 502.

In this case, even if CMMS and Travelers are arguably working toward similar ends in terms of maximizing the availability of coverage under the PCIC Policy, Travelers should not be denied entrance into this action. This Court is of the view that CMMS's potentially adequate representation of Travelers' interest is outweighed by other compelling factors, including and especially the pragmatism of resolving all known issues relating to coverage provided under the PCIC Policy in a single lawsuit involving all concerned parties. In addition, as discussed above, Travelers has convincingly established that it has a substantial and protectable interest in the subject matter of this action that may well be impaired if it is not permitted to intervene.

Therefore, the Court finds that, although the fourth factor does not strongly favor either party, Travelers has nevertheless met its minimal burden of showing inadequate representation. Accordingly, the Court finds that Travelers has demonstrated its entitlement to intervene in this action as of right.

Having so held, the Court need not specifically address whether Travelers is also entitled to permissible intervention under Fed. R. Civ. P. 24(b) at this time.

### III. Conclusion

For the reasons stated in this opinion, Travelers' motion to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) is granted. Travelers shall file and effectuate personal service of its proposed Intervener Complaint within 20 days of the date of this order.

Moreover, the Court notes that CMMS and PCIC have engaged in substantial motion practice during the pendency of the instant motion. In particular, on November 17, 2014, PCIC filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted. That motion was fully briefed on May 15, 2015 and is currently pending before the Court.

In addition, on April 27, 2015, CMMS filed a motion, pursuant to Fed. R. Civ. P. 56, for summary judgment on its single cause of action for a declaratory judgment. That motion was fully briefed on June 9, 2015, and is also currently pending before the Court.

In light of the Court's opinion that Travelers is entitled to participate as a Plaintiff in this action, provision must be made for it to be heard on these pending motions, if it so chooses. Accordingly, Travelers shall have a period of 30 days from the date of this order to file responses to PCIC's motion to dismiss and CMMS's

motion for summary judgment. CMMS and PCIC will then have a period of 20 days to respond to Travelers' filings.

It is

**SO ORDERED**

Dated: Central Islip, New York
September 24, 2015

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge