**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
CERTIFIED MULTI-MEDIA SOLUTIONS,
LTD.,

                       Plaintiff,

ST. PAUL FIRE & MARINE INSURANCE
COMPANY,

                Intervenor Plaintiff,


          -against-


PREFERRED CONTRACTORS INSURANCE
COMPANY RISK RETENTION GROUP, LLC,
                   Defendant.
----------------------------------------------------------X

**ORDER**
14-CV-5227(ADS)(SIL)

<u>**APPEARANCES:**</u>

**Galarza Law Office**
*Attorneys for the Plaintiff*
5020 Sunrise Hwy, 2nd Fl
Massapequa Park, NY 11762
       By: Julio C. Galarza, Esq., Of Counsel

**Putney, Twombly, Hall & Hirson, LLP**
*Attorneys for the Intervenor Plaintiff*
521 Fifth Avenue, 10th Floor
New York, NY 10175
       By: Thomas A. Martin, Esq.
           James M. Strauss, Esq., Of Counsel

**Traub Lieberman Straus & Shrewsberry LLP**
*Attorneys for the Defendant*
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, NY 10532
       By: Cheryl Paula Vollweiler, Esq., Of Counsel

**SPATT, District Judge**.

       This case arises from a dispute about whether the Defendant Preferred Contractors

Insurance Company Risk Retention Group, LLC (the "Defendant") is obligated to indemnify the

Plaintiff Certified Multi-Media Solutions, LTD (the "Plaintiff") pursuant to a commercial

general liability policy with regard to a third-party action pending in the Supreme Court of the State of New York, Bronx County.

On September 6, 2014, the Plaintiff commenced this action against the Defendant seeking a declaratory judgment that it is entitled to coverage under the policy.

On September 24, 2015, the Court granted a motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 24(a)(2) by St. Paul Fire & Marine Insurance Company to intervene in this action as a Plaintiff. St. Paul Fire & Marine Insurance Company refers to itself as "Travelers" but does not explain what relationship, if any, exists between Travelers and St. Paul Fire & Marine Insurance Company. In any event, the Court will refer to St. Paul Fire & Marine Insurance Company as "Travelers" or the "Intervenor Plaintiff" in this decision.

Presently before the Court are (i) a motion by the Defendant pursuant to Fed. R. Civ. P. 12(b)(6), 12(d), and 56 to dismiss the complaint; and (ii) a cross-motion by the Plaintiff pursuant to Fed. R. Civ. P. 56 for summary judgment on its declaratory judgment claim. In addition, Travelers filed a memorandum in support of the Plaintiff's motion and in opposition to the Defendant's motion.

For the reasons set forth below, the Court denies the Defendant's motion and grants the Plaintiff's motion.

## I. BACKGROUND

Unless otherwise specified, the following facts are drawn from the parties' Rule 56.1 statements.

### A. The Policy

#### 1. The Parties

The Plaintiff is a New York corporation with its principal place of business located in Farmingdale, New York. (Compl. at ¶ 3.) It is a "unionized electrical contractor." (Peterson Aff., Dkt. No. 37-1, at ¶ 2.)

The Defendant is an insurance company with its principal place of business in Billings, Montana. (Compl. at ¶ 4.)

On March 14, 2009, the Defendant issued a Commercial General Liability Policy (the "Policy") that provided coverage to the Plaintiff for the period March 14, 2009 to March 14, 2010. (Martin Aff., Dkt. No. 46–3, at p. 1.)

#### 2. The "Named Insured" and Additional "Insureds"

The Policy contains policy declarations, a general policy "form," and separately signed manuscript policy provisions and endorsements that "delete, modify or expand the coverage provisions." (Id. at p. 2–3.)

Significantly, the manuscript Policy provisions define the "Named Insured" as the "Member identified on the Declarations of the Policy." (Id. at p. 9, § 1(E)). The Policy Declarations, in turn, list the Plaintiff as the sole "Member" under the Policy. (Id. at p. 1.) Thus, the Plaintiff is the sole "Named Insured" under the Policy.

The Policy further notes:

Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words 'we,' 'us' and 'our' refer to the company providing this insurance.

(<u>Id.</u> at p. 12.)

In addition, the Policy provides that "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured." (<u>Id.</u>) Section II of the Policy, in turn, sets forth individuals and entities that are also covered as "insureds" under the Policy. (<u>See</u> <u>id.</u> at p. 21, § II.) For example, "executive officers" and "directors" of the Plaintiff are also "insureds" under the Policy "with respect to their duties . . . as officers or directors." (<u>Id.</u> at p. 21, § II(1)(d).) In addition, the Plaintiff's "employees" and "volunteer workers" are "insureds" under the Policy for "acts within the scope of their employment" subject to certain exceptions not relevant here. (<u>Id.</u> at p. 21, § II(2).)

### 3. The Coverage for Bodily Injury Liability

The Policy states that the Defendant will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (<u>Id.</u> at p. 12, § 1(1)(a).) In addition, the Defendant has the "duty to defend the insured against any 'suit' seeking those damages." (<u>Id.</u>)

"Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person[.]" (<u>Id.</u> at p. 25, § V(3).) "Suit" is defined as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (<u>Id.</u> at p. 28, § V(18)).

The Policy states that the insurance applies to "bodily injury" if the bodily injury is: (1) "caused by an 'occurrence' that takes place in the coverage territory"; (2) "occurs during the

policy period"; and 3) certain employees of the Plaintiff did not know "prior to the policy period[] that the 'bodily injury' . . . occurred." (<u>Id.</u> at p. 12, § 1(b).)

The Policy also sets a limit of $1,000,000 for each "occurrence" and a $2,000,000 limit in the aggregate for "occurrences" related to "bodily injury" "regardless of the number of: (a) insureds; (b) claims made or 'suits' brought;  [and] (c) persons or organizations making claims or bringing 'suits.'"  (<u>Id.</u> at p. 2, p. 22, § III(1).)

An Endorsement to the Policy also adds, "Any amount otherwise payable under this Policy . . . shall be further reduced by any amounts paid or incurred by the [Defendant] in defense of any claim against Named Insured and/or Insured, including amounts paid and incurred by attorney's fees, court costs and litigation expenses."  (<u>Id.</u> at 41.)

### 4. The Coverage for Contractual Indemnity Claims

The "Supplementary Payments" provision of the Policy states that the Defendant is also obligated to provide coverage to a third party or indemnitee, who the Plaintiff has agreed to assume tort liability for as part of an "agreement pertaining to its business," <u>see</u> <u>id.</u> at p. 20, p. 26, § V(9).

However, Endorsement 1 states that the "Supplementary Payments" provision is "hereby deleted from the ISO Commercial General Liability."  (<u>Id.</u> at p. 53.)

Endorsement 23 appears to replace the "Supplementary Payments" provision with respect to "contractual indemnity" claims.  It provides:

> Notwithstanding the limit of coverage showing the Declarations and/or Section III of this policy . . . , $10,000 only is the most we will pay as damages for any and all claims, including any claim for contractual indemnification, arising from or related to any 'bodily injury'; 'property damage' or 'personal injury' sustained by an employee of an insured while injured, harmed or damaged in the scope of such employment.

In any action brought by such employee, if *you* are impleaded into said action, or if any third party action over [sic] is commenced against *you*, irrespective of the claims or theories set forth therein, the $10,000 limit of coverage as provided in this endorsement shall apply when:

> 1. The injury sustained by the employee is a 'grave' injury' [sic] as defined by Section 11 of the New York State Workers' Compensation law . . . ; and

> 2. You are required by contract, regulation or law to be insured under a workers' compensation policy providing liability coverage for claims arising from injuries to employees.

(<u>Id.</u> at p. 74) (emphasis in original).

In addition, a footnote to Endorsement 23 defines "We" and "our" as the "company providing insurance," and "You" and Your" as the "Named Insured showing in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (<u>Id.</u>, n. 4, 5.)

## B. The Underlying Action

On October 28, 2008, the Plaintiff entered into a subcontract (the "Subcontract") with non-party Getronics USA Inc. ("Getronics") pursuant to which Getronics hired the Plaintiff to perform electronic services at the Gateway Center at Bronx Terminal Market located at Exterior Street and River Avenue in Bronx, New York ("Gateway Center"). (<u>See</u> Martin Aff., Dkt. No. 46, Exs. A, E.)

On March 19, 2009, Anthony Balzano ("Balzano"), an employee of the Plaintiff, was injured while "dressing electrical cable at the Gateway Center" after he allegedly fell from a "hi low lift." (Martin Aff., Dkt. No. 46, Ex. B, at 3.) As a result of the fall, he allegedly suffered "injuries to his right shoulder, face, right arm and right leg." (Compl., Ex. D.)

On August 7, 2009, Balzano filed a verified complaint in the Supreme Court of the State of State of New York, Bronx County (the "Balzano Action") against (i) BTM Development

Partners, LLC ("BTM"), which owned the Gateway Center; (ii) Target Corporation ("Target"), which leased the premises where Balzano was working when he was injured; and (iii) Plaza Construction Corp. ("Plaza"), which was the general contractor managing construction at the site (collectively, the "Original Balzano Defendants"). (Martin Aff., Dkt. No. 46, Ex. E, at ¶¶ 9–16.) The verified complaint asserted claims against the Original Balzano Defendants for negligence and violation of New York Labor Law § 240 for failing to provide proper safety equipment to construction workers working on the site. (See id. at ¶¶ 26–35.)

On February 15, 2010, Target filed a third-party complaint against the Plaintiff alleging breach of contract and seeking indemnification and contribution from the Plaintiff for the Balzano Action. (See Compl., Ex. C.)

Subsequently, the Plaintiff sent timely notice of the third-party complaint to the Defendant and requested coverage under the Policy. On March 12, 2010, the Defendant sent a letter to the Plaintiff disclaiming coverage because Balzano was an employee of the Plaintiff at the time of his accident. Therefore, the Defendant contended that the "Employer's Liability" exclusion applied and barred coverage to the Plaintiff in defending the Balzano Action. (See Compl., Ex. D.)

On August 23, 2010, the Plaintiff filed an action in the Supreme Court of the State of New York, Suffolk County against the Defendant seeking a declaratory judgment under the Policy that it was entitled to coverage for the Balzano Action (the "Suffolk Declaratory Action"). (See Compl., Ex. E.)

On an unspecified date, the Plaintiff moved for summary judgment in the Balzano Action to dismiss Target's third-party claim against it. (See Compl., Ex. F.) On March 7, 2011, the court in the Balzano Action granted summary judgment dismissing the claims by Target against

the Plaintiff.  (See Compl. at ¶ 14.)  Although not stated explicitly in the parties' papers, it appears that the Plaintiff and the Defendant stipulated to dismiss the Suffolk Declaratory Action because all of the claims against the Plaintiff in the Balzano Action had been dismissed.

On March 17, 2011, Plaza filed a third-party complaint against Getronics for negligence and breach of contract.  (See Compl., Ex. G, at ¶ 6.)  At the time of the March 19, 2009 accident, Getronics was insured under a Commercial General Liability insurance policy issued by Travelers.  (Martin Aff., Dkt. No. 11, at ¶ 7.)  Pursuant to that policy, since March 17, 2011, Travelers has been providing counsel to Getronics in the Balzano Action and paying Getronics' legal fees.  (Id.)

On July 12, 2011, Getronics filed a third-party complaint against the Plaintiff, asserting claims for negligence and breach of contract, as well as seeking indemnification from the Plaintiff for any liability, damages, and fees incurred in the Balzano Action.  (See Compl., Ex. G, Dkt. No. 1–7, at ¶¶ 15, 16–18.)

On an unspecified date, the Plaintiff notified the Defendant of the third-party complaint filed against it by Getronics and again sought coverage under the Policy for its defense.  On January 6, 2012, the Defendant sent a letter to the Plaintiff indicating that Endorsement 23 limited coverage to the Plaintiff in the amount of $10,000.  (See Compl., Ex. J.)

On June 28, 2012, the Defendant sent a letter to the Plaintiff denying its request for reconsideration and re-affirming its determination that Endorsement 23 limits the amount that the Defendant is required to indemnify the Plaintiff for "damages" and "legal expenses" in the Balzano Action to $10,000.  (See Compl., Ex. K.)  However, the Plaintiff indicated in the letter that it intended to cover the Plaintiff's defense costs but not Getronics' defense costs in the Balzano Action subject to its reservation of rights.  (See id.)

8

Thereafter, the parties in the Balzano Action made motions and cross-motions for summary judgment.

On September 14, 2014, New York Supreme Court Justice Kenneth L. Thompson, Jr. rendered a decision granting Getronics' motion for summary judgment (i) dismissing Plaza's third party claims against it; and (ii) awarding judgment to Getronics on its third-party indemnification claim against the Plaintiff. (See Martin Aff., Dkt. No. 46, Ex. B, 8–9.)

On November 24, 2014, Travelers, which, as noted, had been providing a defense to Getronics, sent a letter to the Plaintiff and the Defendant demanding that (i) the Plaintiff take over Getronics' defense in the Balzano Action and (ii) reimburse all reasonable defense costs incurred to date by Travelers in defending Getronics in the Balzano Action. (See Martin Aff., Dkt. No. 11, Ex. E.)

In a December 1, 2014 letter to Travelers, the Plaintiff directed Travelers to seek indemnification from the Defendant, which it contended was obligated to pay Getronics' legal fees under the Policy. (See Martin Aff., Dkt. No. 11, Ex. F.)

According to Travelers, the Defendant never responded to its November 24, 2014 letter.

## C. The Instant Action

As noted on September 6, 2014, the Plaintiff initiated this action against the Defendant seeking a declaratory judgment that the Policy "obligates [the Defendant] to defend and indemnify [the] [P]laintiff in the underlying action brought by Anthony Balzano and third-party action brought by Getronics [] to the extent of the one million dollar . . . policy limit" and "[a]n award of costs and expenses of this action together with reasonable attorneys' fees and expert fees[.]" (Compl. at ¶ 24.)

On September 24, 2015, the Court rendered a decision granting Travelers' motion pursuant to Fed. R. Civ. P. 24(a)(2) to intervene in this action.

On October 7, 2015, Travelers filed an Intervenor complaint seeking a declaratory judgment stating that (i) "Getronics' judgment of contractual indemnity owed to it by [the Plaintiff] is a covered loss under the [Defendant's] Policy"; (ii) the Defendant is "required to pay 100% of the past defense and future indemnity costs associated with the claims brought in the Balzano Lawsuit against Getronics"; and (iii) the Defendant is "liable to Travelers for any and all damages Travelers incurs by virtue of [the Defendant's] breach of its insurance, contractual and common law obligations."  (The Intervenor's Compl. at ¶ 41.)

Presently before the Court is (i) the Defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), 12(d), and 56; and (ii) the Plaintiff's cross motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## II. DISCUSSION

### A. Legal Standards

#### 1. The Defendant's Motion

The Defendant styles its present motion as a motion to dismiss the complaint pursuant to Fed. R. Civ. 12(b)(6) and in the alternative, pursuant to Fed. R. Civ. P. 12(d) and 56.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. WestPoint–Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).

However, Rule 12(d) gives the court discretion to convert a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment when the parties present matters to the Court outside the pleadings, and the parties are "given the reasonable opportunity to present all the material that is pertinent to the motion." With respect to this latter notice requirement, the Second Circuit has stated that "[t]he essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985).

In that regard, "'[a] party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss.'" Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008) (quoting G. & A. Books, 770 F.2d at 295) (alteration in original). Indeed, "[e]ven where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted." Id. (quoting G. & A. Books, 770 F.2d at 295) (alteration added)).

In addition, where the party opposing the Rule 12(b)(6) motion files a cross-motion for summary judgment, courts have also held that the movant has adequate notice that his or her Rule 12(b)(6) motion may be converted to a motion for summary judgment. See Green Tree Servicing LLC v. Christodoulakis, No. 14-CV-2037 (SJF) (AYS), 2015 WL 5719808, at *15 n. 2 (E.D.N.Y. Sept. 29, 2015) ("[S]ince . . . the parties were afforded a reasonable opportunity to present materials outside the pleadings and, in fact, submitted such materials in support of, and in opposition to, plaintiff's cross motion for summary judgment, I need not exclude the extrinsic

evidence from my consideration of defendants' motion under Rule 12(d) of the Federal Rules of Civil Procedure."); <u>Maecker v. Everhome Mortgage Co.</u>, No. 13CV305A (HUS), 2014 WL 6673720, at *3 (W.D.N.Y. Jan. 6, 2014), <u>report and recommendation adopted</u>, No. 13-CV-305, 2014 WL 1270031 (W.D.N.Y. Mar. 26, 2014) ("Here, the defendant refers to loan documents that were not attached to the complaint. The plaintiff has also filed a cross-motion for summary judgment . . . . Thus, the Court will treat the instant motion as a motion for summary judgment.").

Here, in support of its Rule 12(b)(6) motion, the Defendant relied for the most part on documents that were attached to and incorporated in the complaint. However, in opposition to the Defendant's motion, the Plaintiff filed two affidavits by Christian Peterson ("Peterson"), the President of the Plaintiff, and J. Caesar Galarza ("Galarza"), the Plaintiff's counsel, which refer to facts outside of the complaint. (<u>See</u> Galarza Aff., Dkt. No. 37.) Further, the Plaintiff filed a cross-motion for summary judgment and attached a separate affidavit by Galarza that again referred to matters outside of the complaint. (<u>See</u> Galarza Aff., Dkt. No. 38–2.)

Based on the fact that the Plaintiff filed a cross-motion for summary judgment, the Defendant clearly had the opportunity to provide facts outside the pleadings. Indeed, the Defendant must have recognized the possibility that the Court would convert its Rule 12(b)(6) motion into a Rule 56 motion given that it moved in the alternative under Rule 12(d) and Rule 56. <u>See</u> <u>Sahu</u>, 548 F.3d at 69 ("A motion called a motion for summary judgment, <u>whether or not stated as alternatively for dismissal</u>, ordinarily will place a plaintiff on notice that the district court is being asked to look beyond the pleadings to the evidence in order to decide the motion.") (emphasis added); <u>Sabeniano v. Citibank</u>, N.A. New York, No. 12 CIV. 1928 ALC DCF, 2013 WL 1164891, at *3 (S.D.N.Y. Mar. 20, 2013) ("In fact, Defendant styled its Motion under Rule

12(b)(6) or 12(d), indicating it anticipated conversion. Therefore, the Court will treat the pending motions as cross-motions for summary judgment.).

Accordingly, the Court will convert the Defendant's Rule 12(b)(6) motion to one under Rule 56. However, the Court notes that regardless of what standard it applies to the parties' motions, their dispute centers on the interpretation of Endorsement 23 of the Policy. As explained below, the Court finds that the plain language of Endorsement 23 affords the coverage sought by the Plaintiff in this action. Therefore, the Court does not need to resort to any extrinsic evidence to resolve the parties' dispute despite the fact that it finds that it is permitted to do so.

### 2. Fed. R. Civ. P. 56

Fed. R. Civ. P. 56(a) provides that a court may grant summary judgment when the "movant shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."

"Where the moving party demonstrates 'the absence of a genuine issue of material fact,' Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In that regard, a party "must do more than simply show that there is some metaphysical doubt as to the material facts[.]" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Further, the opposing party "'may not rely on conclusory allegations or unsubstantiated speculation[.]'" F.D.I.C. v. Great Am. Ins.

Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)).

"Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." Id. (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## B. As to Jurisdiction and Choice of Law

### 1. Jurisdiction

As an initial matter, the Court notes that the complaint alleges that this Court has jurisdiction over this action based on "28 U.S.C. §§ 1331, 1332, 1337 and 1343, and has supplemental jurisdiction over [the] Plaintiff's state law claims pursuant to 28 U.S.C. § 1391." (Compl. at ¶ 1.)

However, most of these jurisdictional statutes do not apply to this case.

28 U.S.C. § 1331 confers federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Here, the Plaintiff seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "Declaratory Judgment Act"), that it is afforded coverage under the Policy for damages and attorneys' fees resulting from the Balzano Action up to the general policy limit of $1,000,000. However, the Declaratory Judgment Act does not confer subject matter jurisdiction, and the parties do not raise any federal issue relating to the interpretation of the Policy. See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752 (2d Cir. 1996) ("Section 2201 provides no independent basis for subject matter jurisdiction."); Sikorsky Aircraft Corp. v. Lloyds TSB Gen. Leasing (No. 20) Ltd., 774 F. Supp. 2d 431, 437-38 (D. Conn. 2011) ("'[T]he declaratory

judgment statute does not confer jurisdiction on a district court,' and 'a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff.'") (quoting <u>Fleet Bank, Nat. Ass'n v. Burke,</u> 160 F.3d 883, 885-86 (2d Cir. 1998) (alteration in original)).  Therefore, the Plaintiff's claim does not "arise" under federal law, and 28 U.S.C. § 1331 is not applicable to this case.

Similarly, 28 U.S.C. § 1337, which confers jurisdiction over actions arising under an Act of Congress regulating commerce, and 28 U.S.C. § 1343, which confers jurisdiction over actions in which an individual is deprived of his or her civil rights, are clearly not applicable to the Plaintiff's declaratory judgment claim because it is based solely on the interpretation of an insurance policy and is governed by state law.

However, the Court does have diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, which confers federal jurisdiction over matters that involve an amount in controversy that exceeds $75,000 and is between citizens of different states.  "To determine the amount in controversy in a declaratory action premised on diversity jurisdiction, courts look to the 'potential monetary value of the right, or amount of the liability,' in 'a present or potential coercive action[.]'" <u>Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.,</u> 697 F.3d 59, 68 (2d Cir. 2012) (quoting parenthetically <u>Developments in the Law: Declaratory Judgments—1941–1949</u>, 62 Harv. L. Rev. 787, 801 (1949)); <u>see also</u> <u>Am. Standard, Inc. v. Oakfabco, Inc.,</u> 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007) ("In actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation.").

Here, the parties are diverse — the Plaintiff is a New York corporation and the Defendant is a Montana insurance group with its principal place of business in Montana.  Further, the

potential liability to the Defendant is the $1 million limit on coverage set forth in the Policy. Therefore, there is diversity jurisdiction over the Plaintiff's declaration judgment claim.

### 2. Choice of Law

As the basis of jurisdiction is diversity of citizenship, the Court must next determine what law to apply in interpreting the Policy. In that regard, the Plaintiff's chosen forum is New York. Therefore, this Court must apply New York principles in determining the choice of law. See Booking v. Gen. Star Mgmt. Co., 254 F.3d 414, 419 (2d Cir. 2001). Under those principles, '"[t]he first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved."' Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 151 (2d Cir. 2008) (quoting In re Allstate Ins. Co., 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (N.Y. 1993) (alteration in original)).

Here, the Policy contains a choice of law clause selecting Montana law: "This Policy shall be governed and construed in accordance with the laws of the State of Montana." (Martin Aff., Dkt. No. 46, Ex. C, at p. 52, § XII.) However, "even when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law." Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d 51, 55 (2d Cir. 1991) (citing Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984)).

For example, where the parties fail to bring a foreign choice of law clause to the Court's attention and apply New York law in their briefs, courts have found that the parties consented to the application of New York law and will disregard the foreign choice of law clause. See Walter E. Heller & Co., 730 F.2d at 52 ("Although New York courts generally accord deference to choice-of-law provisions in contracts, . . . such provisions are not controlling and may be disregarded where the most significant contacts with the matter in dispute are in another State . . .

16

. Moreover, in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied.") (emphasis added)).

Here, the parties do not bring the choice of law clause to the Court's attention and rely primarily on New York cases in their legal memoranda. Thus, the parties' conduct indicates consent to the application of New York law. Further, New York has the strongest relationship to the Plaintiff's claim because the Plaintiff is a New York corporation, the underlying third-party contractual indemnity claim is pending in New York state court, and the Balzano Action arises from a personal injury that took place in New York. Therefore, the Court will disregard the Montana choice of law provision and will instead apply New York law to interpreting the Policy. See Lumbermens Mut. Cas. Co. v. Flow Int'l Corp., 844 F. Supp. 2d 286, 300 (N.D.N.Y. 2012) ("'[E]ven where the parties include a choice of law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law,' and the court may therefore disregard the clause and apply the law to which the parties have assented.") (quoting Bombardier Capital, Inc. v. Richfield Housing Center, Inc., Nos. 91–CV–750, 91–CV–502, 1994 WL 118294, at *3 (N.D.N.Y. Mar. 21, 1994)).

### 3. The Applicable New York Law

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 98 (2d Cir. 2012). Those rules of interpretation require the court "'to give effect to the intent of the parties as expressed in the clear language of the contract.'" Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co., 702 F.3d 118, 122 (2d Cir. 2012) (quoting Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002)). Further, the "[t]erms in an insurance contract must be

given "'their plain and ordinary meaning.'"  Id. (quoting 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 112, 119 (2d Cir. 2010)).

As an initial matter, when deciding a motion for summary judgment, a court must determine whether the disputed language of the policy is ambiguous.  See Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010) ("Under New York law, which the parties agree is controlling here, the initial question for the court on a motion for summary judgment with respect to a contract claim is 'whether the contract is unambiguous with respect to the question disputed by the parties.'") (quoting International Multifoods Corp. v. Commercial Union Insurance Co., 309 F.3d 76, 83 (2d Cir. 2002)).

Contract language is ambiguous when it is "'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"  JA Apparel Corp. v. Abboud, 568 F.3d 390, 396-97 (2d Cir. 2009) (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000)).

"When the question is a contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity."  Seiden Associates, Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).

On the other hand, "[i]f a court concludes a provision in an insurance contract is ambiguous, it may consider extrinsic evidence to ascertain the parties' intent at the formation of the contract."  Olin Corp., 704 F.3d at 99 (JA Apparel Corp., 568 F.3d at 397).  "If the extrinsic evidence fails to establish the parties' intent, courts may apply other rules of contract

interpretation, including New York's rule of *contra proferentem*, according to which ambiguity should be resolved in favor of the insured."  Id.

**C. As to the Parties' Cross-Motions**

Here, the Policy provides a $1,000,000 limit per occurrence for claims arising from "bodily injury."  The Plaintiff seeks a declaratory judgment that it is entitled to indemnification up to the $1,000,000 Policy limit for damages and expenses incurred in defending against the third-party contractual indemnification claim brought by Getronics against it in the Balzano Action.

The Defendant does not dispute that the claim asserted by Getronics against the Plaintiff in the Balzano Action arises out of a "bodily injury" to Balzano, and is therefore, covered under the Policy.  However, the Defendant asserts that the language of Endorsement 23 "limits the amount of coverage for [the Plaintiff] in the Underlying Action to $10,000."  (The Def.'s Mem. of Law, Dkt. No. 5–9, at 7.)

Endorsement 23 provides:

Notwithstanding the limit of coverage shown in the Declaration and/or Section II of this policy . . . , $10,000 only is the most *we* will pay as damages for any and all claims, including any claim for contractual indemnification, arising from or relating to any 'bodily injury' . . . sustained by an employee of an insured while injured, harmed or damages in the scope of such employment.

In any action brought by such employee, if *you* are impleaded into said action, or if any third party action over [sic] is commenced against *you*, irrespective of the claims or theories set forth therein, the $10,000 limit of coverage as provided in this endorsement shall apply when:

1. The injury sustained by the employee is a 'grave injury' as defined by Section 11 of the New York State Workers' Compensation Law, as follows:

   • Death
   • Permanent and total loss or use or amputation of an arm, leg, hand or foot,

- Loss of multiple fingers,
- Loss of multiple toes,
- Paraplegia or quadriplegia,
- Total and permanent blindness,
- Total and permanent deafness,
- Loss of nose,
- Loss of ear,
- Permanent and severe facial disfigurement,
- Loss of an index finger; or
- An acquired injury to the brain caused by an external physical force resulting in total permanent disability; and

2. *You* are required by contract, regulation or law to be insured under a workers' compensation policy providing liability coverage for claims arising from injuries to employees.

(Martin Aff., Ex. C, at p. 74–5) (emphasis in original).)  In addition, the Endorsement defines the words "we" and "our" as "the company providing this insurance" and the words "you" and "your" as the "Named Insured shown in the declarations, and any other person or organization qualifying as a Named Insured under this [P]olicy."  (Id. at p. 74.)

The Defendant relies primarily on the first paragraph of Endorsement 23, which limits the amount that the Defendant will pay in damages to $10,000 for "any and all claims, including any claim for contractual indemnification, arising from or relating to any 'bodily injury' sustained by an employee of an insured."  (The Def.'s Mem. of Law, Dkt. No. 5–9, at 6–7.)

It is undisputed that Balzano was an employee of the Plaintiff; sustained bodily injuries in the course of his employment; and initiated the Balzano Action seeking damages resulting from his injuries.  It is also undisputed that Getronics, who hired the Plaintiff as a sub-contractor on the project, impleaded the Plaintiff into the Balzano Action seeking contractual indemnity.  Thus, there is also no dispute that Getronics' contractual indemnity claim against the Plaintiff "arises from or relates" to Balzano's injury.  Therefore, the Defendant asserts that the first paragraph of "Endorsement 23 clearly and unambiguously limits any obligation under the [Defendant's]

Policy to $10,000" for damages resulting from Getronics' third-party claim.  (The Def.'s Mem. of Law at 6–7.)

On the other hand, the Plaintiff asserts that the second paragraph, not the first paragraph, governs the present dispute.  Under the second paragraph, "if *you* are impleaded into said action, or if any third party action over [sic] is commenced against *you* . . . . the $10,000 limit of coverage as provided in this endorsement shall apply when . . . . [t]he injury sustained by the employee is a 'grave injury' as defined by Section 11 of the New York State Workers' Compensation Law."

It is undisputed that the Plaintiff was impleaded into the Balzano Action when Getronics filed a third-party complaint in the Balzano Action against the Plaintiff seeking, among other things, contractual indemnity under the Subcontract.  (See Compl., Ex. G.)

Further, the Plaintiff claims that it is also undisputed that Balzano did not suffer a "grave injury" as defined by the New York State Workers' Compensation Law.  (See the Pl.'s Repy Mem. of Law, Dkt. No. 41, at ¶ 9; the Intervenor Pl.'s Mem. of Law, Dkt. No. 45, at p. 9–10.)

The Defendant does not appear to dispute this statement in its memorandum of law, nor does it file a Local Civil Rule 56.1 statement.  Also, there is no evidence in the record suggesting that Balzano suffered a "grave injury" under New York State Workers' Compensation Law. (See Martin Aff., Ex. C, at p. 74–5.)  Indeed, according to the Defendant's own account of Balzano's injury set forth in its March 12, 2010 coverage letter to the Plaintiff, Balzano "sustained injuries to his right shoulder, face, right arm and right leg" as a result of falling from a lift on the job site.  (See Compl., Ex. D.)  Nowhere in this letter, nor in Balzano's underlying state complaint, is it alleged that Balzano's leg, shoulder, or arm had to be amputated as a result of his injuries, or that he suffered "permanent and severe facial disfigurement."  Accordingly, the

Court agrees with the Plaintiff that it is undisputed for purposes of this motion that Balzano did not suffer a "grave injury" under New York State Workers' Compensation Law.

Thus, the Plaintiff asserts that under the plain language of the second paragraph of Endorsement 23, the coverage afforded to him is not limited to $10,000 but is rather subject to the general policy limit of $1,000,000 for all claims relating to "bodily injury." (See the Pl.'s Mem. of Law at 3.)

In addition, the Intervenor Plaintiff filed a legal memorandum concurring with the Plaintiff's interpretation of Endorsement 23 and asserting that the Court should reject the Defendant's reading of the Endorsement. (The Intervenor Pl.'s Mem. of Law at 2–3.)

The Court finds that the plain language of Endorsement 23 and the canons of contract interpretation support the interpretation offered by the Plaintiff, and therefore, the Court need not reach the parole evidence offered by the Plaintiff.

The first paragraph of Endorsement 23 states, "$10,000 only is the most we will pay as damages for any and all claims, including any claim for contractual indemnification, arising from or related to any 'bodily injury' . . . sustained by an employee of an insured while injured, harmed, or damages in the scope of such employment." (Martin Aff., Ex. C, at p. 74–5) (emphasis added).

The second paragraph of Endorsement 23 states, "In any action brought by such, employee if You are impleaded into said action or if any third party action . . . is commenced against You, irrespective of the claims or theories set forth therein, the $10,000 limit of coverage as provided shall apply when . . . the injury sustained by the employee is a 'grave injury' as defined by Section 11 of the New York State Workers' Compensation Law." (Id.) (emphasis added). As noted, a footnote to the Endorsement states that, "[t]he words 'you' and 'your' refer

to the <u>Named Insured</u> shown in the declaration, any other person or organization qualifying as a <u>Named Insured</u> under this policy." (<u>Id.</u>) (emphasis added).

Thus, the plain language of the first paragraph refers only to claims "arising from . . . any 'bodily injury' . . . sustained by an employee of <u>an</u> <u>insured</u>"; while the second paragraph refers to actions where "You" — meaning the <u>Named Insured</u> — is impleaded into the action or  third party actions commenced against "You" — meaning the <u>Named Insured</u>."

That distinction is critical because the Policy defines the "Named Insured" and "an insured" differently.  The "Named Insured" is defined as "the Member identified on the Declaration of the Policy."  (Martin Aff., Ex. C, at p. 9.)  The Plaintiff is the only "Member" identified in the Policy Declarations, and therefore, is the sole "Named Insured," under the Policy. (<u>Id.</u> at p. 2.)

 On the other hand, an "insured" is defined by Section II of the Policy as referring to individuals associated with the Plaintiff, such as the Plaintiff's "executive officers," "directors," "shareholders," "volunteer workers," and "employees."  (Martin Aff., Ex. C, at p. 21, § II(1)(d).)

This distinction is made clear in the first paragraph of the Policy which states, "Throughout this policy the words 'you' and 'your' refer to the Named Insured showing the Policy Declarations . . . . The word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured." (<u>Id.</u> at p. 12.)  As the Intervenor Plaintiff correctly notes, the distinction between the "Named Insured" and an "Insured" is also carried through in other sections of the Policy.  For example, an Endorsement to the Policy setting forth the "Aggregate Limit" on coverage repeatedly refers to the "Named Insured" and an "Insured" separately: "In other words, if the [Defendant] pays a claim(s) which coverage is provided to a <u>Named Insured and/or Insured</u> in an amount equal to the Aggregate limit . . . the [Defendant]

shall not have any further liability under the Policy"; "Any amount otherwise payable under this Policy including the Per Occurrence Limit or Aggregate Limit shall be further reduced by any amount paid or incurred by the [Defendant] in defense of any claim against any Named Insured and/or Insured; and "Any Named Insured and/or Insured making a claim must give the [Defendant] notice in writing of any claim within sixth (60) days . . . after it is unknown to any Named Insured and/or Insured during the Term." (Id. at p. 41–42) (emphasis added).

Therefore, it is clear from the Policy language that the "Named Insured" and the "Insured" refer to different entities. Applying these definitions, the first paragraph of Endorsement 23, which limits coverage to $10,000 in damages "for any and all claims, including any claim for contractual indemnification, arising from or relating to any 'bodily injury' . . . sustained by an employee of an insured," applies to claims against the Plaintiff's executive officers, directors, shareholders, employees, and volunteer workers. On the other hand, the second paragraph applies to actions where "You" — meaning the "Named Insured," which refers solely to the Plaintiff — is impleaded into the action or a third party action is commenced against "You" — again referring to the "Named Insured," meaning the Plaintiff — and the injury sustained by the Plaintiff's employee is a "grave injury."

The Court finds that this reading of Endorsement 23, which is favored by the Plaintiff, gives effect to both the first and second paragraphs of the Endorsement and is consistent with the Policy as a whole. Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 650 (S.D.N.Y. 1999) ("The Court must read the indemnification provision in conjunction with all other provisions in the agreement to avoid inconsistencies or an interpretation which would render another provision superfluous or without effect.").

On the other hand, the Defendant asks the Court to read the first paragraph of Endorsement 23 as applying a limit of $10,000 for coverage over any claims arising out of a "bodily injury" to an employee regardless of whether those claims were brought against an "insured" or the "Named Insured." Such a reading ignores the distinction established by the Policy between "an insured" and the "Named Insured." It also renders the second paragraph meaningless because if, as the Defendant contends, the first paragraph was intended to limit coverage under the Policy to "any claims" brought by employees against an "insured" and the "Named Insured," then there would be no need to include the second paragraph of the Endorsement specifying that the $10,000 limit on damages applies to claims brought against the Named Insured that involve a "grave injury."

Therefore, the Court declines to adopt the Defendant's interpretation because it ignores the plain language of the Policy, is inconsistent with the Policy as a whole, and renders the second paragraph of the Policy superfluous. See LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) ("'[A]n interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'"); Travelers Indem. Co. of Ill. v. F & S London Pub, Inc., 270 F. Supp. 2d 330, 334 (E.D.N.Y. 2003) (rejecting an interpretation of an insurance policy because "Paragraph 4 of the Lease would be rendered meaningless if the indemnity clauses were read to encompass any and all damage to the Property, regardless of fault.")

Applying the Plaintiff's reading of Endorsement 23 to the facts of this case, it is clear that the Endorsement does not limit coverage to the Plaintiff for the Balzano Action. That is because, as noted above, it is undisputed that Getronics impleaded the Plaintiff, which is the "Named Insured," into the Balzano Action, and Balzano does not allege that he suffered a "grave injury"

under New York State Workers' Compensation Law. Thus, under the plain language of the second paragraph of Endorsement 23 the coverage afforded to the Plaintiff in the Balzano Action is not limited to $10,000. Instead, the Plaintiff is entitled to coverage up to the $1,000,000 general policy limit for actions arising from "bodily injury."

Therefore, the Court finds that the Plaintiff is entitled to a judgment stating that the Defendant is required to "defend and indemnify [the] [P]laintiff in the underlying action brought by Anthony Balzano and [the] third-party action brought by Getronics USA to the extent of the one million dollar ($1,000,000) policy limit." (See Compl. at ¶ 24.) Accordingly, the Court grants the Plaintiff's motion for summary judgment and denies the Defendant's motion to dismiss.

The Court notes that the Intervenors have also filed a complaint seeking a declaratory judgment stating that (i) "Getronics' judgment of contractual indemnity owed to it by the Plaintiff is a 'covered loss' under the Defendant's Policy"; (ii) the Defendant is "required to pay 100% of the past defense and future indemnity costs associated with the claims brought in the Balzano Lawsuit against Getronics"; and (iii) the Defendant is "liable to [the Intervenor Plaintiff] for any and all damages Travelers incurs by virtue of the [Defendant's] breach of its insurance, contractual and common law obligations." (The Invervenor Compl. at ¶ 41.)

This claim is not the subject of the Plaintiff's present motion for summary judgment and seeks a judgment that has different wording and appears somewhat broader than the declaratory judgment sought by the Plaintiff. However, the Court recognizes that this decision may render the Intervenor Plaintiff's claim for a declaratory judgment unnecessary because the Court has ruled that the Plaintiff is entitled to coverage under the Policy for the Balzano Action up to the $1,000,000 general policy limit. Therefore, the Court directs the Intervenor Plaintiff to file a

letter on ECF no longer than three pages within five days of the date of this decision regarding the status of its claim in light of this decision.

## III. CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is denied, the Plaintiff's motion for summary judgment is granted, and the Plaintiff is entitled to a declaratory judgment stating that the Defendant is required to "defend and indemnify the Plaintiff in the underlying action brought by Anthony Balzano and the third-party action brought by Getronics USA to the extent of the one million dollar ($1,000,000) policy limit."

Further, the Court directs the Intervenor Plaintiff to file a letter on ECF within five days of the date of this decision informing the Court of the status of its claim for a declaratory judgment in light of this decision.

**SO ORDERED.**
Dated: Central Islip, New York
December 12, 2015

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge